We'll hear from Mr. Vincent first. May it please the Court. Your Honors, we're here today on behalf of David Beville, who I represent, who is the mayor of the city of Quitman, Texas. But the arguments that I'll make today apply to all of the defendants in this case, all of the appellants. This case is one in which we seek the reversal of the district court's denial of our motions for summary judgment on qualified immunity. And the basic reason and the clear reason is that because the district court did not hold the plaintiffs to the burden, the well-established burden required to overcome qualified immunity, and the plaintiffs did not submit sufficient evidence to overcome the defense of qualified immunity. Now, as the Court has stated several times, and the Court's aware that whenever a governmental entity, a governmental employer, a governmental actor claims qualified immunity, it shifts the burden of proof at that point. And the plaintiff has the burden to overcome that qualified immunity. There are two key questions that have to be answered in order for the Court to determine that, in order for the plaintiff to overcome that qualified immunity. Number one is whether the officer has violated the constitutional right in question. Number two, however, is whether the right at issue was clearly established at the time of the alleged conduct. That's the question that I would like to address today because, as the Court has previously stated, that is a doozy of a question. It's a heavy burden to carry. And in this case, it was not carried. Now, the Court has stated that the second question is the burden is heavy, a right is clearly established only if relevant precedent has placed the constitutional question beyond debate. That is cited in the case of Morrow v. Meacham. Moreover, the question must be framed specifically regarding the conduct that's in question in this case, not something that is a broadly established or broadly stated question of fact or question of law. The Court went on to state, and perhaps the best is the Court in Cope v. Cogdell stated, as the United States Supreme Court had previously established, that a clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Going on, the Supreme Court said that unless existing precedent squarely governs the conducted issue, the governmental actor is entitled to qualified immunity. That's stated in Hogan v. Broussard v. Hogan. Now, in this case, what did the plaintiff attempt to do to carry this heavy burden, to overcome this doozy of a question, to satisfy this burden? Cited two cases, and I'll have to move through these quickly. But the first one was what they have called Bevel 1, which, as the Court understands and recalls, this was an interlocutory appeal in 2022 from 12b-6 motions that were filed by Defendants Fletcher, Caslow, and Wheeler. Defendant Dobbs was not a part of that. Defendant Dobbs did not participate in filing the 12b-6 motion. The only motion that has been filed on behalf of Dobbs is simply this motion for qualified immunity in summary judgment form. Now, the second case that was cited is Kenney, which was a case not on point, not nearly on point with the conduct of David Dobbs, the mayor. It did not address that issue of how a mayor should react in unique situations like this, and only addressed the issue of whether third-party actors could influence, could be held liable for influencing a governmental actor. Perhaps the most resounding reason that this burden has not been met in this case is stated by the very trial court itself. And in this case, the memorandum of opinion notes, I'll just use the judge's own words, after he stated that while agreeing that Bevel's personal interest in helping his friend McGee get out of jail motivated Bevel to some extent, and agreeing that the personal interest was quintessential in determining whether this was protected speech or not, he stated that the Fifth Circuit precedent is not quite clear on the question of how and to what extent an employee's personal interest plays a role in public concern analysis. He then went on to say, after reviewing the case law, the district court sees little consistency in the analytical frameworks utilized, employed. And then, having said that, and having analyzed this, and gone through the Chavez case and the whole history of these cases in the Fifth Circuit, he then ruled that the law was clearly established. Thank you. Mr. Blaze. Thank you, Your Honor. May it please the Court. I represent James Wheeler, the former district attorney of Wood County. There are really three bases upon which we believe the trial court erred in denying the motion for summary judgment on qualified immunity. As it relates to all of the defendants, we believe that in this particular case, Mr. Bevel was not speaking as a citizen on the matter of public concern, nor did his interest in the speech outweigh the government's interest in the efficient provision of public services, in essence, the conic pickering test, relative to evaluating the statements made versus the governmental interest in regulating or controlling or addressing the statements made, depending upon the nature of the speech and the— How do you distinguish the Supreme Court's decision in Lane? Well, Your Honor, I think— That's also about testimony outside the scope of the job. Right. Well, first of all, I think two things matter. What was the nature of the testimony and its import on the case, and in this particular case—and, frankly, the motivation of the speaker, which, as this Court has held, matters. And in this particular case, Bevel was not trying to weed out public corruption in the judicial system. He was trying to help a friend get a better deal because he was worried about—he knew he was guilty, but he thought he was being sent to trial too quickly, and he was—didn't really like the plea bargain. Now, those are personal matters, and, essentially, not trying to, like, remedy the broader concept of corruption, but rather helping a friend. When you place that with, well, what's the governmental interest? Bevel was the captain of the police department, and when you provide testimony in the very court that you are arresting and prosecuting criminals, saying you can't get a fair trial in the court, that is a—that implicates—that implicates the governmental interest in saying, wait a second, you can't do this because that potentially impacts not only this particular case, but that impacts the ability of the City of Quitman Police Department and, frankly, Wood County, to be able to prosecute criminals who are arrested and that—with that officer being on the stand testifying. And that is why this policy is, frankly, a valid policy. And I understand that you can't have a policy that violates the First Amendment, but this policy makes sense in the sense that you can't use your status as a police officer to help a friend get a continuance or inject yourself into the judicial system because that in and of itself is a problem because that reflects that there's—you are basically abusing your power. But the— I'll grant you the government interest. I suppose, though, that also cuts against—it cuts in favor of you on government interest. Doesn't it, for the same reason, cut against you on the public concern? And the very fact that this is debilitating the government makes it a public issue, doesn't it? Well, and this is where—I mean, this is where I think this was a— and then you go into the content, context, form analysis relative to, well, what's he—what was the context? What was the content and what was the form? He was not testifying as to police corruption. Matter of fact, the content of the affidavit was a pro forma affidavit. He did not actually list any facts. It wasn't very long. I'll grant you that. But it does talk about personal relationships between the sheriff, the district attorney, and the presiding judge, putting aside, obviously, whether that's a valid or incorrect statement. The point is that certainly sounds like something that would be of interest to the public. Well, it may be of interest to the public, but in this particular case, does the governmental interest outweigh the interest of the individual providing the speech? And this is where I believe that the—that Bevel's status as a police captain was very important. And if you look at the Supreme Court in Rankin and also this Court's opinion in Carroll, it says, attention must be paid to the responsibilities of the employee within the agency. The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability that the employer's—the employee's role entails. And in Carroll, they said, given—and this was the chief of police— given the extent of his authority and public accountability, Carroll, as the chief of police, accepted a burden of caution to avoid speech that would negatively affect the ability of the JPD to provide services. And that's exactly what you have when you have somebody provide—a police officer and a police captain and the command staff providing an affidavit saying you can't receive a fair trial in this county. If this was a janitor or if this was just another citizen or if this was a secretary, we would—we would be having a different conversation. But what we have is the police captain. Okay. So this is—this goes to your—this is more of a balancing argument. Yes, Your Honor. In a—speaking as an employee on a matter not of public interest. Yes, Your Honor. It goes to the—it goes—well, again, it's— That's fine. You can mix it up. Frankly, there's a mix—there's a mixture because part of that does go into is he's speaking as a matter of public concern because there is the—there is the mixed motive here. This is the—this is trying to help out a friend, not speaking to corruption generally. But then you also have the governmental balancing. And what you have is his public concern analysis is down here and the governmental interest is way up here relative to this particular case. And as a segue relative to my client's specific defense, he also has an absolute immunity defense because the nature of the claim against my client, Jim Wheeler, is he threatened to withhold resources and not prosecute claims against Quintin. And that is a—that's a prosecutorial function regardless of the motive of the particular action. And that also implicates the governmental interest in allowing—in not allowing Bevel to do what he did. Thank you. I see you've saved two minutes for rebuttal. Yes, Your Honor. Mr. Davis. May it please the court, counsel? Your Honor, I—no, I don't have much time, so I'll try to get through this just as quickly as I can. In the court's memorandum opinion at the district court level, instead of analyzing qualified immunity first, the district court addressed conspiracy and contravention of certainly the Martin case and Fannisdale. There are five factors, only five facts that the district court said exist in order to find, one, that my client, Kaslow, was not entitled to qualified immunity and there was somehow an issue of conspiracy. Those five factors are as follows. Sheriff Kaslow was angry about the affidavit and believed it was an attack on his integrity. It doesn't matter in a qualified immunity analysis. There's an objective, not a subjective standard, so you can toss that out. Two, there has never been a single case that has found that somebody's First Amendment rights have been violated because somebody was angry with them for what they said. It just doesn't matter in this context. Second, during a text conversation about a charity fishing event that had been sent to Sheriff Kaslow and that Sheriff Kaslow sent back, one of those Sheriff Kaslow sent a copy of Mr. Bevel's affidavit to Mr. Holland, who is not a party to this suit. He's not an alleged conspirator. He's not an alleged co-conspirator. He's not a person who makes a decision about whether to retain or let Mr. Bevel go. It simply doesn't matter, and they had no conversations about it whatsoever. I mean, it was obviously an item of interest, but that's about it. And there's never been a case, never been a case in a First Amendment case, that has found that sending somebody a public document somehow amounts to interference with their employment and a suggestion or request that they be terminated. Both Sheriff Kaslow and Mr. Holland attended a community charity event for underserved youth. It was a fishing event. That was the third factor that the court found was that they were both at this fishing event, although you can tell from their text messages that they didn't see each other there because Holland said, how was the event? The Sheriff said we had a decent turnout, and then Holland said it was very wet. That was the extent of it. They didn't see each other at the event. They didn't talk to each other at the event. And they never talked to each other about this matter involving Mr. Bevel. Fourth, Your Honor. Thank you. Your time has expired. Oh. Thank you. And we have your brief. Mr. Cole. Thank you, Judge Ho. May it please the Court. I'd like to focus my very brief time with the Court this morning on the conspiracy aspect of Bevel's First Amendment retaliation claim. Now, the Court doesn't need to reach the question of whether a conspiracy existed unless it concludes that Bevel has in fact identified a constitutional deprivation. Now, we don't think he has for the reasons that my colleagues have ably discussed. But in the event the Court disagrees, the lack of evidence of a conspiracy involving Judge Fletcher and the other co-defendants represents an independent reason why the district court erred in granting summary judgment and requiring Judge Fletcher to stand trial. I take it you agree with Judge Oldham's dissent in the previous ruling? I do, but I won't relitigate that here. Well, that's sort of you're anticipating my question, which is why does the law of the case doctrine not apply here? Well, for a couple of reasons, and this is kind of one of the two points I wanted to make. So first, without a conspiracy, there is no viable First Amendment claim against Judge Fletcher. And you'll recall from the prior appeal that the whole theory of First Amendment liability was that Judge Fletcher was party to this joint meeting at which they all pressured the mayor and the police chief to fire Bevel for this affidavit testimony. So we went back to the trial court, and we had discovery. And nine depositions later, that key allegation, the joint meeting, what we can tell for sure is that that didn't happen. There was certainly no joint meeting at which Judge Fletcher was party. And there were certainly no threats by Judge Fletcher. And that was, again, the key allegation in the prior appeal that allowed this to get to summary judgment. So the question is, what does he have left? And what he has left is this conspiracy allegation. But I think the key case, and this is the second point I wanted to make, is the evidence of conspiracy here is utterly lacking with respect to Judge Fletcher. And I think the key rule for the Court to apply is from Twombly. And that is the evidence a plaintiff's offer of conspiracy evidence at summary judgment has to tend to rule out the possibility of parallel action or independent action. And here, at best, it tends to rule it in. That is to say, while the evidence certainly shows that Judge Fletcher was upset with the affidavit and showed that he wanted Bevel prosecuted for perjury, it certainly doesn't show he was part of some separate conspiracy to have him fired. Now, Bevel's response is what he sort of points to three buckets of information. That's the personal journal entries. He says this shows he was angry, evidence of a common retaliatory motive. But a common motive, again, without more doesn't suffice. So what does he say? He says, well, yeah, but there was this meeting with the district attorney between Fletcher and the district attorney where Fletcher said, well, I want him prosecuted for perjury. Okay. Again, that might be relevant to the defunct conspiracy claim, but not to the live one with respect to the firing. And the last thing is the close working relationship, and you have a reason for why that doesn't suffice. Thank you. Ms. Rodenberg, we'll hear from you now. May it please the Court, I'm Jody Rodenberg, and I'm here today with Laura Benitez Geisler representing the appellee, Mr. Terry Bevel. Mr. Bevel was the target of a vindictive campaign by his local elected officials after he exercised his First Amendment rights. We are here today on the second interlocutory appeal before trial. I will be addressing one issue, which is that the district court correctly determined after a thorough review of the summary judgment record and reviewing the evidence in a light most favorable to Bevel that Bevel's affidavit was protected speech under the First Amendment. Second, Ms. Geisler will address the qualified immunity analysis as well as the inapplicability of absolute immunity. As I move into the substantive discussion of the First Amendment issue, the appellant's arguments are premised entirely on an incorrect standard of review that is not permissible on interlocutory appeal. The court should view the evidence in the light most favorable to Bevel. Instead, the appellants ask of this court to construe the evidence in their favor and ignore the evidence that supports Bevel's claims. The district court correctly held that Bevel's affidavit is protected by the First Amendment. Only two elements are challenged by the appellants. One, that Bevel was speaking as a citizen on a matter of public concern. And two, that Bevel's interest in speaking on a matter of public concern outweighed the city equipment's interest in the efficient provision of public services. Importantly, in Bevel I, the appellants challenged these same two issues at the pleading stage. The Fifth Circuit already held that Bevel's claim amounted to a deprivation of his First Amendment rights. Then, as the district court stated, the summary judgment evidence—the facts did not meaningfully change after discovery. In fact, the summary judgment record firmly establishes that Bevel spoke as a private citizen on a matter of public concern. Now, going directly to Mr. Bevel's motive, this court only needs to look at three pieces of evidence to assess Bevel's motives and to affirm the district court's ruling. First, the court can look to the affidavit itself. All of these statements go to whether a particular criminal defendant could receive a fair trial in Wood County. The affidavit at issue states that a particular individual could not get a fair and impartial trial in Wood County. That's his speech, based on the pretrial publicity and based on the personal relationships between three of the appellants. Now, importantly, Fletcher's brief admits there was significant media attention around the underlying criminal proceeding. Second, the city of Quitman hired an internal investigator to conduct an investigation. That investigation was relied on prior to Bevel being terminated. That investigation stated, quote, Bevel simply believes that the above-referenced opinions concerning these individuals and the rate at which the case is being moved is evidence that Mr. Magee is being treated in an unfair and prejudicial manner relative to the other defendants with similar indictments. How should we view the part of the affidavit where Mr. Bevel states, I am currently the Quitman Police Department captain and the former jail administrator for Hopkins County and a formal investigator with Wood County Sheriff's Office? If we want to, if you're arguing that we consider this as a personal statement on a matter of public interest, should we just view that as a reason to think he has firsthand knowledge, or is he speaking in an official capacity which might change the equation on how we view it for qualified immunity purposes? I have two answers to that question, Judge Englehart. The first is that in Bevel I, the Fifth Circuit already decided that Bevel spoke as a private citizen, even though he included his title in his affidavit. But second, there is a 2015 case out of this court that directly addresses that issue. It's Graziosi v. City of Greenville, Mississippi, 775F3731. That case states, identifying oneself as a public employee does not forfeit one's ability to claim First Amendment protections. To the contrary, such identification by public employees is welcome as they occupy trusted positions in society and are members of a community most likely to have informed, indefinite opinions on matters of import to the community. When we look to Bevel's own deposition testimony, which is in the record, he testified on at least four separate occasions that his concern was that a defendant could not receive a fair trial in Wood County. So when you view the facts in the light most favorable to Bevel, which this court must do, then Bevel's motives must be construed as speaking on a matter of public concern, whether a criminal defendant can get a right to a fair trial. Now, the appellant's mixed motive contention is wrong for two reasons. First, it uses the wrong standard of review in its analysis, and it also blatantly misrepresents some of the facts in the record. First, the appellant's arguments only take into account their selected facts and ignores the facts that are favorable to Bevel, which is counter to this court's standard of review. You want to address the conspiracy aspect before you run out of time? Your Honor, Ms. Geisler will represent the conspiracy in her discussion of qualified immunity. All of the cases that the appellants relied on that have a mixed speech discussion for the purposes of First Amendment protection, the speech at issue in those cases has always been connected to the employee's personal interest as an employee, not some personal motives that they may have. And as this court observed in Bevel I, Bevel's affidavit testimony is more analogous to speech by citizens who are not public employees. The record on appeal undisputedly shows that any personal interest Bevel may have had to testify on McGee's behalf was unrelated to his employment, which is the test that this court has used in the past. It was not motivated by his employment. It was not motivated by Bevel's conditions of employment. It was not motivated by Bevel's coworkers. It was not motivated by the city equipment or the city equipment officials. When the law is understood correctly and the facts are viewed in the light most favorable to Bevel, this court is compelled to affirm the district court's ruling. If this court does not have any further questions, I'm going to turn it over to Ms. Geisler. Thank you, Ms. Geisler. Good morning. Morning. As this court noted in Kenyon v. Weaver, qualified immunity is supposed to strike a balance between the competing objectives of protecting citizens from government retaliation for expressing their opinions, while qualified immunity, on the other hand, is supposed to protect government officials from suit unless, as is the case here, the officials' conduct violates a citizen's clearly established constitutional rights. And to be sure, the scope of protection that the appellants enjoy is broad. They've already had the opportunity to have these same exact immunity defenses heard and rejected multiple times. But even though appellants may have the absolute right to bring the second interlocutory appeal, it does not mean they are entitled to immunity from Bevel's claims. That issue was decided over two years ago by the Bevel I panel, and that's why their claims should be denied again. Specifically, in Bevel I, the panel determined that Kenyon v. Weaver was clearly established law sufficient to put appellants, excluding Mr. Dobbs, on notice that their conduct was objectively unreasonable and denied qualified immunity to those appellants. There's been no intervening law in the meantime that would warrant overturning this panel's decision in Bevel I that the law as to their conduct was objectively unreasonable, that they could not use their positions, their official positions to influence a third-party employer, in this case Mr. Dobbs, to retaliate against him because they did not like what he said about them in his affidavit. To grant qualified immunity on the arguments that they presented to this Court today, this Court would have to find a reason to find that the panel's decision in Bevel I as to their conduct being objectively unreasonable and apply a new standard, which I will speak to in just a moment, that this unclear laws to mixed motive of an employee, you would have to find that that test or that consideration for determining whether or not the employee's speech is protected somehow translates into whether or not a government official's conduct is objectively unreasonable. That just doesn't apply in appellant's site to no authority for which this Court can make that giant leap. So as they make this argument, it's just a false equivalency because an employee's subjective motives for speaking are not going to be determinative as to whether or not a government official's conduct is objectively reasonable under clearly established law. Qualified immunity only looks at the conduct of the public official for purposes of determining whether their conduct was objectively unreasonable. So this mixed motive analysis, looking at an employee's subjective intent as part of one element for determining whether or not their speech is protected, it just doesn't, it's just not applicable. And while Appellant Dobbs was not a party to the first interlocutory appeal, he's also not entitled to qualified immunity because when Bevel was fired back in June of 2017, the law was clearly established that a public employee's truthful testimony under oath made outside the scope of his employment or their ordinary job duties was protected speech. And that summary judgment record conclusively establishes subjectively that Mr. Dobbs knew of Mr. Bevel's motives whenever he was, whenever he made the decision to have him fired. Specifically, the internal investigation report, as Ms. Rodenberg, I believe, said, that it was Mr. Bevel's opinion that Mr. McGee could not receive a fair trial. He simply believed that these individuals and the rate at which the case was being moved is evidence that Mr. McGee was being treated in an unfair and prejudicial manner. He knew that. Dobbs knew that at the time he fired him, so he knew that he was speaking outside the scope of his employment because Mr. Bevel's affidavit did not involve anyone from the city of Quitman, so he was speaking as a private citizen, and he knew that he was speaking in a judicial, in connection with a judicial proceeding, which as Lane B. Franks has placed an emphasis on protecting that speech. And he knew that he was motivated by his belief and his opinion that Mr. McGee could not receive a fair trial. So even, he knew the law was clearly established for objective purposes, but also he knew subjectively at the time he fired him that his conduct was objectively unreasonable under clearly established law. As it pertains to the conspiracy, again, their analysis is fatally flawed because the panel in Bevel 1 decided that their conduct was objectively unreasonable under Kinney. And so all that's left for consideration in the conspiracy is whether or not the evidence was sufficient to establish an agreement from which a jury could infer an agreement. And this Court has no jurisdiction to consider or weigh the evidence that the Court considered below in determining that there were genuine fact issues. The framework for determining qualified immunity in the context of a conspiracy involves— I think they're saying that there's no evidence of any agreement or conspiracy. Do you want to— That is— I grant you that we're here for legal issues, not fact issues, but— Yes. The district court did point to a number of evidence it found established, that raised genuine issues and material fact as to the party's participation in agreement. The district court noted the communications among the parties, the relationship among the parties, the shared motive. They were all very upset that they felt that reputations had been attacked. So the Court took all those things into consideration and determined that there was sufficient evidence to establish a conspiracy and that this should go to a jury to decide. And so no matter—they've tried to recharacterize this argument as that there's not legal sufficiency or there's not materiality. But if you look at their statements in their briefs, what they're complaining about is the sufficiency of the evidence. I mean, Wheeler—Appellant Wheeler makes just the blanket assertion that Bevel failed to produce any evidence of an agreement to the parties. You know, Cassidy complains that the evidence relied on by the district court at best shows Cassidy's appropriate concern about the effect of the affidavit. These are all sufficiency of the evidence and not within the Court's jurisdiction at this time. Certainly after trial, if there's a favorable verdict in Mr. Bevel's favor, undoubtedly they would raise the same issues and this Court would have to scrub the record once again to determine whether or not evidence of a conspiracy existed. But the district court did make that finding and put it in its holding and that should be upheld. And as it goes to the conspiracy, the appellants re-urge arguments that were expressly rejected by this Court in Bevel I. For example, Appellant Fletcher claims he was entitled to qualified immunity because he was not the one to fire Bevel, that he could not be linked to a violation of Bevel's rights. The Court explicitly rejected that argument because the objectively and reasonable conduct was established by Kenney and the— What is your best evidence in your mind, the strongest evidence of the conspiracy? It's a strongly circumstantial evidence. You acknowledge there's no—you're not presenting evidence of an actual agreement. It's all inference. I'm sorry, yes, which is why it should be determined the fact finder to weigh the credibility of the collective evidence to determine whether or not it establishes evidence of a conspiracy. But you had these communications from the parties,  Defendant Wheeler sends a text picture of it, a text message with a picture of the affidavit to Cassley, who then forwards it on to the city secretary. By Monday morning, you have a meeting between Mayor Dobbs and the District Attorney Wheeler, wherein, according to Mr. Dobbs' testimony, Mr. Wheeler was angry. He wanted to know it. He took great lengths to complain about how this would affect him personally, how it would affect his financial future and his reputation. He tried to imply that Mr. Bevel was a dirty cop by showing Mr. Dobbs a video of him from 10 years ago. Contrary to what he argues now in his prosecutorial immunity claim, Mr. Dobbs made no mention of any concerns about how this would affect future cases or whatever Brady disclosures he might have to make sometime in the future. In that meeting, according to Dobbs, and his testimony must be taken as true at this stage, it was all about the grievances and Mr. Wheeler's being upset about how Bevel's affidavit affected him personally. There was nothing about it that had anything to do with whether or not, you know, he could continue to bring cases brought by the city equipment officials.  But in any event, that conspiracy part, for purposes of qualified immunity, we've already met our bourbon. What's left to be decided is whether or not a jury agrees there's sufficient evidence of a conspiracy. As it relates to Mr. Wheeler's, I mean, Mr. Wheeler's prosecutorial immunity argument, he has simply not carried his burden. It's his burden to carry. First of all, his entire argument is based off of his own self-serving testimony, which is completely at odds with that of Mayor Dobbs. And so he doesn't have any evidence to support that he was acting in his capacity as an advocate for the state in connection with the judicial phase of the criminal process. The only, although I think the record constrain the facts in Mr. Bevel's favor, is that Jim Wheeler was acting for an advocate for Jim Wheeler during this meeting. And he just simply has not met his burden of establishing that he's entitled to prosecutorial immunity. In conclusion, what I would like to say is that in order to grant the appellants the relief that they're asking here today, this court would have to find a basis to set aside the panel's decision in Bevel 1 in order to grant qualified immunity to Fletcher, Wheeler, and Kaslu. This court would also have to construe all disputed facts in the appellant's favor and reject Mr. Bevel's facts as true. And this court would also have to ignore its jurisdictional limitations on interlocutory appeal to find that there was insufficient evidence of a conspiracy. Thank you. Thank you, Ms. Geisler. We have two minutes for Mr. Blase. Thank you, Your Honor. I'm in a hurry. To briefly address why Bevel 1 doesn't control, and I believe Judge Jones in her opinion on granting the stay here said it precisely, and that is the issue of whether or not he spoke on a matter of public concern and other issues, including whether or not the law was clearly established, are still at issue in this case. The fact that on the pleadings they may have said, well, you said you pled plausible facts to proceed forward. We're no longer at that stage. And where we are is— Right, but on the issue of what the clearly established violation is, isn't that precisely what this court dealt with in the first Bevel case? And this is where I would suggest, Your Honor, no, because they relied upon Kenney v. Weaver, and we can get into whether or not Kenney v. Weaver was clearly established because Sims decided after that, recognized how muddy it was. But that was the 30,000-foot view about whether or not a person who doesn't have authority over the individual employee can still be held liable under a First Amendment violation. That's a 30,000-foot view. There was not the level of granularity that is required for purposes of qualified immunity in this particular case. In this Court's opinion in Noyola, the Court held, fact-specific balancing test complicates the issue of whether or not an act violates the law, and a very high degree of prior factual particularity may be necessary. And there is not a prior case that's close to this. Kenney v. Weaver is not factually close to this case at all. And if that's the case you're going to rely upon, that the Court's relying upon for the clearly established precedent, I would submit to you that the level of granularity required for the clearly established component of qualified immunity just has not been met. As a matter of fact, in this particular case, nobody thought what he did was protected speech. Nobody. He didn't think it. Chief Cole didn't think it. If nobody thought it, then how could it be clearly established and the issue be on debate? Thank you. We have your arguments, and the case is submitted. We are adjourned. Thank you. Thank you.